**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DANIEL GATSON, et al.,      :
                              :  Civil Action No. 09-1658 (SRC)
            Plaintiffs,    :
                              :
                              :
           v.                :  **OPINION**
                              :
STATE OF NEW JERSEY, et al.,   :
                              :
            Defendants.    :

**APPEARANCES:**

> DANIEL GATSON, Plaintiff pro se
> #PN438674/75039
> Northern State Prison
> P.O. Box 2300
> Newark, New Jersey 07114
>
> ANTHONY HANKS, Plaintiff pro se
> 478 Park Avenue
> Brooklyn, New York 11205

**CHESLER**, District Judge

Plaintiffs, Daniel Gatson, a convicted state prisoner currently confined at the Northern State Prison in Newark, New Jersey, and Anthony Hanks, residing at 478 Park Avenue in Brooklyn, New York, seek to bring this action in forma pauperis. Both Plaintiffs provide affidavits of indigency. Based on Plaintiffs' affidavits of indigency, and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g) with respect to plaintiff Daniel Gatson, the Court will grant both Plaintiffs' applications to proceed in forma pauperis ("IFP") pursuant to 28

U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the Complaint should be dismissed in its entirety.

## I.  BACKGROUND

Plaintiffs, Daniel Gatson ("Gatson"), and Anthony Hanks ("Hanks"), bring this civil action against the following defendants: State of New Jersey; Anne Milgram, New Jersey Attorney General; Somerset County, New Jersey; Office of the Somerset County Prosecutors; Wayne Forrest, Prosecutor; Matthew Murphy, Assistant Prosecutor; Detective Christopher J. Shea; Captain Thomas Dunne; Captain Ronald Thornburg; Lieutenant Richard Ike; Detective Robert L. Bryant, Jr.; Sgt. Russell W. Leffert; Warren Township, New Jersey; Sgt. Timothy J. Wenzel; Morris County, New Jersey; Watchung Borough, New Jersey; Brian Newman; Bergen County, New Jersey; Office of the Bergen County Prosecutor; John Molinelli, Prosecutor; John W. Donohue, Assistant Prosecutor; Wayne Mello, Assistant Prosecutor; Thomas Czulada; Parsippany Township, New Jersey; Troy Hills Township,

New Jersey; Michael Lasalandra; Det. Richard Nicoletti; Hudson County, New Jersey; Liane Abad; Ioannis John Arvanitis; Paul Sangiuliano; Frank Mele; Lee Niles; Martha Arvanitis; Robert Grogan; John Does (1-100); and ABC Business Entities. (Complaint, Caption and ¶¶ 9-38).  On August 26, 2009, Plaintiffs filed a motion to amend their Complaint to add two new defendants, the Honorable Arthur N. D'Italia, J.S.C. (Judge of the Superior Court of New Jersey), and the Honorable William Meehan, J.S.C., to the action.  The following factual allegations are taken from the Complaint and amended Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of Plaintiffs' allegations.

Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1985, alleging violations of their Fourth, Fifth and Fourteenth Amendment rights.  Plaintiffs also assert that the defendants' actions constitute the torts of intentional and negligent infliction of emotional distress; malicious prosecution; misuse of process; negligence; and official oppression.

Plaintiffs allege that the defendants wrongfully seized personal property, money and a boat from plaintiffs, and have failed to return same.  At issue are Gatson's 28-foot Bayliner Boat, allegedly non-contraband money in the amount of $256,340.00

(EY-1), and 19 pieces of gold and diamond jewelry (LD-15) and a 22 carat gold chain (PS-16),[1] which were seized on July 31, 2001.

In the documents provided by plaintiffs with their Complaint, it appears that Gatson and others were the subject of a comprehensive Task Force investigation of numerous residential burglaries committed in Bergen, Morris, Somerset and Monmouth Counties between late 1999 and July 2001.  The task force involved numerous police departments and prosecutorial employees, which gathered evidence against Gatson from three informants (two of whom were confidential), various records subpoenas, and wiretaps obtained via court order on various cell phones belonging to or used by Gatson.  This evidence led the police to believe that Gatson was using his grandmother, Iva Gatson, as a front, his home, as well as the home of Gatson's aunt, Robin Treadvance, to stash some of the proceeds from the numerous burglaries.  Accordingly, on or about July 27, 2001, the Somerset County Prosecutor's Office made an *ex parte* application for the issuance of three search warrants and one seizure order for a 1985 Bayliner boat in connection with the on-going criminal investigation of Gatson.  The affiant, Sgt. Christopher J. Shea, set forth in detail in the *ex parte* application the information

---

[1]  The designations EY-1, LD-15 and PS-16 refer to the individual item numbers assigned to the property seized and detained by the Somerset County Prosecutor's Office as noted in the Evidence Log attached to the Complaint as Exhibit H.

obtained during the two-year investigation, as mentioned above, as well as confirmation that Gatson had no identifiable legitimate income. The Somerset County Prosecutor's Office sought the issuance of three search warrants based upon probable cause to believe that the fruits of criminal activity would be found in the three identified locations, namely, (1) the residence of Daniel Gatson; (2) the residence of Daniel Gatson's grandmother, Iva Gatson, with whom Gatson had previously resided; and (3) the residence of Robin Treadvance, Gatson's aunt, with whom Gatson had phone conversations concerning money transactions. The search warrants were issued on July 30, 2001, by the Honorable Arthur N. D'Italia, A.J.S.C. (Compl., Ex. E).

All of the property sought by Plaintiffs in this action were seized pursuant to the search warrants, on July 31, 2001. Some of the property seized formed the basis for Gatson's indictment and eventual conviction in November 2004 in the Superior Court of New Jersey, Law Division, Bergen County, under Indictment No. 01-11-2672.[2]

---

[2] Gatson appealed his New Jersey state court conviction and sentence. On direct review, Gatson raised arguments regarding the search warrants, contending that they were obtained unlawfully and in violation of his constitutional rights. The conviction was affirmed by the Superior Court of New Jersey, Appellate Division, on November 1, 2007, but the matter was remanded for sentencing in light of State v. Pierce, 188 N.J. 182 (2006). The New Jersey Supreme Court denied certification on February 6, 2008. State v. Gatson, 194 N.J. 269 (2008).

Gatson admits that he has filed several actions in state court for replevin with respect to the property at issue in this case.  On December 9, 2005, Gatson filed a civil action in the Superior Court of New Jersey, Law Division, Somerset County, against Wayne Forrest, Docket No. Som-L-1733-05.  The matter was transferred to the Superior Court of New Jersey, Law Division, Mercer County under docket no. L-3181-07.  Summary judgment in favor of defendant, Wayne Forrest, the Prosecutor of Somerset County was granted on July 18, 2008, dismissing Gatson's Complaint for the return of the monies sought.  Gatson appealed from the order of summary judgment, and the Appellate Division affirmed, finding that summary judgment was properly granted because defendants were entitled to prevail as a matter of law.[3] See Gatson v. Forrest, 2009 WL 3082063 (N.J. Super. App. Div. Sept. 29, 2009).

On August 8, 2008, Matthew Murphy, Assistant Prosecutor for the Somerset County Prosecutor's Office wrote to Gatson advising plaintiff that the Office wished to return certain personal property to plaintiff, including the 1999 Bayliner Boat and $8,938.00 held on account, which had been seized during the

----

[3]  The Appellate Division noted that the money seized from the home of Gatson's aunt, pursuant to the search warrant on July 31, 2001, was packaged in a manner so precisely matching the description of cash register receipts wrapping the stolen cash from the Arvinitises' home, that the Somerset County Prosecutor's Office released the cash, plus interest, to the Arvinitises on August 24, 2001.  The amount released was $253,310.00, which was the amount sought by Gatson in his replevin action and in this action.

earlier investigation.  Murphy advised Gatson to make
arrangements to take custody of the property by September 1,
2008.  Any unclaimed property remaining with the Office by
October 1, 2008 would be discarded.  (Compl., Exhibit U).

Plaintiffs also state that Gatson had filed another replevin
action in Bergen County, against Bergen County Prosecutor John
Molinelli, Docket No. BER-L-2987-07.  This action was dismissed
with prejudice on November 16, 2007, because it was duplicative
of the replevin action initially filed in Somerset County.

It appears that plaintiffs seek the return of the money
seized, namely, $256,340.00 in cash and Gatson's 1999 Bayliner
boat, as well as some jewelry.  Plaintiffs assert claims of
malicious prosecution, illegal search and seizure in violation of
the Fourth Amendment, and denial of due process in violation of
his Fifth and Fourteenth Amendments rights.

In the amended Complaint (docket entry no. 4), Plaintiffs
also assert a 18 U.S.C. § 1962© RICO claim, under the Racketeer
Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §
1961, et seq.  Plaintiffs seek more than $10 million in
compensatory and punitive damages.

II.  STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-
134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996),
requires a district court to review a complaint in a civil action
in which a prisoner is proceeding in forma pauperis or seeks

redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to <u>sua</u> <u>sponte</u> dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to <u>sua</u> <u>sponte</u> screening for dismissal under both 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, because Gatson is a prisoner and is proceeding as an indigent, and because plaintiff Hanks is proceeding as an indigent.

In determining the sufficiency of a <u>pro</u> <u>se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007)(following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) and <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972)).  <u>See</u> <u>also</u> <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a <u>pro</u> <u>se</u> plaintiff's "bald assertions" or "legal conclusions."  <u>Id.</u>

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the

8

former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  See also Erickson, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2).

However, recently, the Supreme Court refined this standard for summary dismissal of a Complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  Id.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).[4]  Citing its recent opinion in Bell

---

[4]  Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required."  Fed.R.Civ.P. 8(d).

<u>Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), for the
proposition that "[a] pleading that offers 'labels and
conclusions' or 'a formulaic recitation of the elements of a
cause of action will not do,' "<u>Iqbal</u>, 129 S.Ct. at 1949 (quoting
<u>Twombly</u>, 550 U.S. at 555), the Supreme Court identified two
working principles underlying the failure to state a claim
standard:

> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to
> legal conclusions.  Threadbare recitals of the elements of a
> cause of action, supported by mere conclusory statements, do
> not suffice ... .  Rule 8 ... does not unlock the doors of
> discovery for a plaintiff armed with nothing more than
> conclusions.  Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss.
> Determining whether a complaint states a plausible claim for
> relief will ... be a context-specific task that requires the
> reviewing court to draw on its judicial experience and
> common sense.  But where the well-pleaded facts do not
> permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not
> "show[n]"-"that the pleader is entitled to relief." <u>Fed.
> Rule Civ. Proc.</u> 8(a)(2).

<u>Iqbal</u>, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin
> by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they
> plausible give rise to an entitlement to relief.

<u>Iqbal</u>, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. at 1948.  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint is plausible.  Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, ___ F.3d ___, 2009 WL 2501662, *4 (3d Cir., Aug. 18, 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[5] that applied to federal complaints before Twombly.  Fowler, 2009 WL 2501662, *5.  The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.]  In other words, a complaint must do more than allege the

_____

[5]  In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Id., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

> plaintiff's entitlement to relief.  A complaint has to
> "show" such an entitlement with its facts.  See Phillips,
> 515 F.3d at 234-35.  As the Supreme Court instructed in
> Iqbal, "[w]here the well-pleaded facts do not permit the
> court to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not 'show [n]'-'that
> the pleader is entitled to relief.'"  Iqbal, [129 S.Ct. at
> 1949-50].  This "plausibility" determination will be "a
> context-specific task that requires the reviewing court to
> draw on its judicial experience and common sense." Id.

Fowler, 2009 WL 2501662, *5.

This Court is mindful, however, that the sufficiency of this

pro se pleading must be construed liberally in favor of

Plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89

(2007).  Moreover, a court should not dismiss a complaint with

prejudice for failure to state a claim without granting leave to

amend, unless it finds bad faith, undue delay, prejudice or

futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-

111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir.

2000).

### III.   SECTION 1983 ACTIONS

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Most all of the named defendants are state actors, except named defendants Liane Abad, Robert Grogan, Ioannis "John" Arvanitis and Martha Arvanitis, who are private citizens that were burglarized and had their stolen property returned to them by the prosecutors' offices.  Accordingly, these individual defendants, not being state actors, will be dismissed from this action.

Additionally, the State of New Jersey must be dismissed from this action pursuant to the Eleventh Amendment.  The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."  As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself

13

or by federal statute.  See, e.g., Edelman v. Jordan, 4

651, 663 (1974).  The Eleventh Amendment protects state

their agencies and departments from suit in federal court

regardless of the type of relief sought.  Pennhurst State School

and Hospital v. Halderman, 465 U.S. 89, 100 (1984).  Similarly,

absent consent by a state, the Eleventh Amendment bars federal

court suits for money damages against state officers in their

official capacities.  See Kentucky v. Graham, 473 U.S. 159, 169

(1985).  Section 1983 does not override a state's Eleventh

Amendment immunity.  Quern v. Jordan, 440 U.S. 332 (1979).

IV.  ANALYSIS

A.  Prosecutorial Claims

Plaintiffs' claims against the state prosecutors, namely,

the Office of the Somerset County Prosecutor, Wayne Forrest

(Somerset County Prosecutor), Matthew Murphy (Assistant

Prosecutor for Somerset County), the Office of the Bergen County

Prosecutor, John Molinelli (Bergen County Prosecutor), John W.

Donohue (Assistant Prosecutor for Bergen County), and Wayne Mello

(Assistant Prosecutor for Bergen County), for their role in the

seizure of plaintiffs' property pursuant to a search warrant must

be dismissed under the statute of limitations.  See infra,

Section IV. D.

Before analyzing the statute of limitations, the Court

wishes to analyze the possibility that claims against the

prosecutors could be dismissed under prosecutorial immunity.

14

"[A] state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under § 1983. Imbler v. Pachtman, 424 U.S. 409, 410 (1976). Thus, a prosecutor's appearance in court as an advocate in support of an application for a search warrant and the presentation of evidence at such a hearing are protected by absolute immunity. Burns v. Reed, 500 U.S. 478, 492 (1991). Similarly, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).

A prosecutor is not entitled to absolute immunity, however, for actions undertaken in some other function. See Kalina v. Fletcher, 522 U.S. 118 (1997) (prosecutor is protected only by qualified immunity for attesting to the truth of facts contained in certification in support of arrest warrant, as in her provision of such testimony she functioned as a complaining witness rather than a prosecutorial advocate for the state); Burns, 500 U.S. at 492-96 (the provision of legal advice to police during pretrial investigation is protected only by qualified immunity); Buckley, 409 U.S. at 276-78 (prosecutor is not acting as an advocate, and is not entitled to absolute immunity, when holding a press conference or fabricating evidence). See also Yarris v. County of Delaware, 465 F.3d 129

(3d Cir. 2006)(where the Court of Appeals for the Third Circuit presents a detailed and nuanced analysis of when a prosecuting attorney is, and is not, entitled to absolute immunity for allegedly wrongful acts in connection with a prosecution, holding, for example, that a prosecutor is not entitled to absolute immunity for deliberately <u>destroying</u> highly exculpatory evidence, but is entitled to immunity for making the decision to deliberately <u>withhold</u> exculpatory evidence before and during trial, but not after the conclusion of adversarial proceedings).

Here, it is not entirely clear whether Plaintiffs' allegations against the prosecutor defendants fall within the scope of prosecutorial duties protected under prosecutorial immunity.  Plaintiffs allege, among others, that the prosecutor defendants engaged in malicious prosecution and deprived Plaintiffs of their Fourth Amendment right of protection from unreasonable search and seizure.  While there is absolute immunity for certain actions on behalf of a prosecutor, it is not entirely clear whether all alleged actions are covered under the absolute immunity doctrine.  See <u>Schrob v. Catterson</u>, 948 F.2d 1402, 1409-17 (3d Cir. 1991)(absolute immunity covers a prosecutor's actions in (1) creating and filing of an <u>in rem</u> complaint; (2) preparing of and applying for the seizure warrant; and (3) participating in <u>ex parte</u> hearing for the issuance of the seizure warrant).  Therefore, the Court will refuse to dismiss the claims against these prosecutor defendants on the grounds of

absolute immunity from a lawsuit for damages.  However, as
discussed _infra_ in Section IV. D., the claims are dismissed
against all of the prosecutor defendants on statute of
limitations grounds.

B.  Judicial Immunity

    Plaintiffs' claims against defendants, the Honorable Arthur
N. D'Italia, J.S.C. and the Honorable William Meehan, J.S.C.,
must be dismissed because these defendants are subject to
judicial immunity from suit.

    As a general rule, a judicial officer in the performance of
his or her duties has absolute immunity from suit.  Mireless v.
Waco, 502 U.S. 9, 12, 112 S.Ct. 286, 116 L. Ed.2d 9 (1991).  This
immunity extends to judges of courts of limited jurisdiction,
such as New Jersey municipal court judges.  Figueroa v.
Blackburn, 39 F. Supp.2d 479, 484 (D.N.J. 1999), aff'd, 208 F.3d
435, 441-43 (3d Cir. 2000).  Further, "[a] judge will not be
deprived of immunity because the action he took was in error, was
done maliciously, or was in excess of his authority." Stump v.
Sparkman, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 55 L. Ed.2d 331
(1978).  Judicial immunity serves an important function in that
it furthers the public interest in judges who are "at liberty to
exercise their functions with independence and without fear of
consequences." Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213,
18 L. Ed.2d 288 (1967).  Judicial immunity is an immunity from

suit, not just from ultimate assessment of damages.  <u>Mireless</u>, 502 U.S. at 11.

Courts have repeatedly emphasized the extensive scope of judicial immunity, holding that immunity applies "'however injurious in its consequences [the judge's action] may have proved to the plaintiff'."  <u>Gallas v. Supreme Court</u>, 211 F.3d 760, 769 (3d Cir. 2000)(quoting <u>Cleavinger v. Saxner</u>, 474 U.S. 193, 199-200 (1985)).  "Disagreement with the action taken by the judge ... does not justify depriving that judge of his immunity.... The fact that the issue before the judge is a controversial one is all the more reason that he should be able to act without fear of suit."  <u>Stump</u>, 435 U.S. at 363-64.  Further, highlighting its expansive breadth, the court explained "the public policy favoring the judicial immunity doctrine outweighs any consideration given to the fact that a judge's errors caused the deprivation of an individual's basic due process rights."  <u>Figueroa</u>, 39 F. Supp.2d at 495.  Thus, allegations that actions were undertaken with an improper motive diminishes neither their character as judicial actions nor the judge's immunity.  <u>See</u> <u>Forrester v. White</u>, 484 U.S. 219, 227 (1988).

There are two circumstances, however, where a judge's immunity from civil liability may be overcome.  These exceptions to the doctrine of judicial immunity are narrow in scope and are infrequently applied to deny immunity.  The first exception is

where a judge engages in nonjudicial acts, <u>i.e.</u>, actions not taken in the judge's judicial capacity.  <u>Id</u>.; <u>see</u> <u>also</u> <u>Figueroa</u>, 208 F.3d at 440.  The second exception involves actions that, though judicial in nature, are taken in the complete absence of all jurisdiction.  <u>Mireless</u>, 502 U.S. at 11; <u>Figueroa</u>, 208 F.3d at 440.  Neither exception is applicable in the present case.

Here, Plaintiffs fail to assert any allegations against Judge D'Italia and Judge Meehan that would show that they acted outside their judicial capacity.  Plaintiffs' allegations pertain to Judge D'Italia's issuance of the search warrants sought by the Somerset County Prosecutor's Office and Judge Meehan's presiding over Gatson's state criminal trial, in which Gatson was convicted and sentenced on November 5, 2004.  These allegations clearly involve only court-related matters occurring during those state court proceedings.  Consequently, Plaintiffs have failed to allege any actionable claim against Judge D'Italia or Judge Meehan.  There simply are no allegations to suggest that these judges acted beyond the scope of their judicial authority, or in the complete absence of all jurisdiction.  Therefore, defendants, Judge D'Italia and Judge Meehan, are absolutely immune from liability, and this Complaint must be dismissed with prejudice, in its entirety, as against these defendants.

C.  <u>Claims for Recovery of Property Are Now Barred</u>

It appears that Plaintiffs are attempting by this lawsuit to make an "end run" around the judgments entered against Gatson in

19

his state court actions for replevin.  As stated above, on
December 9, 2005, Gatson filed a civil action for replevin with
respect to the same property at issue here, in the Superior Court
of New Jersey, Law Division, Somerset County, against Wayne
Forrest, Docket No. Som-L-1733-05.  That matter was transferred
to the Superior Court of New Jersey, Law Division, Mercer County
under docket no. L-3181-07, and summary judgment was granted in
favor of defendant, Wayne Forrest, on July 18, 2008, dismissing
Gatson's Complaint for the return of the monies sought.  Gatson
had filed another replevin action in Bergen County, against
Bergen County Prosecutor John Molinelli, Docket No. BER-L-2987-
07, which was dismissed with prejudice on November 16, 2007,
because it was duplicative of the replevin action initially filed
in Somerset County.   Thus, to the extent that Gatson wishes to
challenge those judgments, his recourse is properly made by
direct appeal in state court.  Indeed, Gatson did appeal from the
order of summary judgment in the replevin action against Forrest,
and the Appellate Division affirmed, finding that summary
judgment was properly granted because defendants were entitled to
prevail as a matter of law.  See Gatson v. Forrest, 2009 WL
3082063 (N.J. Super. App. Div. Sept. 29, 2009).  Therefore, this
Court lacks jurisdiction to hear an appeal of Plaintiff's state
court civil judgment, pursuant to the Rooker-Feldman Doctrine.[6]

_____

   [6] Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923)
and District of Columbia Court of Appeals v. Feldman, 460 U.S.
462, 482, (1983).

"Under the Rooker-Feldman doctrine, a district court ...
lacks subject matter jurisdiction, if the relief requested
effectively would reverse a state court decision or void its
ruling." Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 192
(3d Cir. 2006). This doctrine is a narrow one, and "applies only
to cases brought by (1) state-court losers (2) complaining of
injuries caused by state court judgments (3) rendered before the
district court proceedings commenced and (4) inviting district
court review and rejection of those judgments." Id.

More simply stated, Rooker-Feldman bars a federal proceeding
when "entertaining the federal claim would be the equivalent of
an appellate review" of the state judgment. Allah v. Whitman,
No. 02-4247, 2005 WL 2009904, at *4 (D.N.J. Aug. 17,
2005)(quoting FOCUS v. Alleghany County Court of Common Pleas, 75
F.3d 834, 840 (3d Cir. 1996)). Thus, a cause of action asserted
in federal court that ultimately seeks to vacate the decision or
reasoning of a state court is barred under Rooker-Feldman.
Desi's Pizza, Inc. V. City of Wilkes-Barre, 321 F.3d 411, 419-20
(3d Cir. 2001)(Rooker-Feldman bars those claims that "[are]
inextricably intertwined with [the] state adjudication, meaning
that federal relief can only be predicated upon a conviction that
the state court was wrong.").

This Court finds that the Rooker-Feldman doctrine applies
here to bar this proceeding. First, Gatson admittedly lost in
his New Jersey state court proceeding which he filed seeking the

return of the same monies now the subject of this litigation.[7]
Second, this New Jersey state court adjudication against Gatson
occurred before Gatson filed this action in federal court.
Finally, Gatson is essentially asking this Court to review and
reject the state court adjudication against him.  Clearly then,
Plaintiffs' purported claims against all of the defendants here
with respect to monies and property seized during July 2001
pursuant to validly-obtained search warrants, are "inextricably
intertwined" with the July 2008 decision of a New Jersey state
court that entered summary judgment in favor of Wayne Forrest and
the Somerset County Prosecutor's Office and against Gatson,
because such claims amount to nothing more nor less than a
"prohibited appeal" from the decision of the New Jersey state
court.  Therefore, this Court does not have subject matter
jurisdiction over Plaintiff's claims under the <u>Rooker-Feldman</u>
doctrine, and the Complaint must be dismissed accordingly.

D.   <u>Section 1983 Claims of Constitutional Violations Are Untimely</u>

Next, this Court also finds that Plaintiffs' claims under 42
U.S.C. § 1983 and § 1985, alleging violations of their
constitutional rights under the Fourth, Fifth and Fourteenth
Amendments, are now time-barred.

---

[7]   Plaintiffs' exhibits show that $253, 310.00 in United
States Currency was disbursed on August 24, 2001, to Ioannis
Arvanitis and Martha Arvanitis, pursuant to <u>N.J.S.A.</u> 2C:65-2,
because there was no colorable dispute as to their ownership of
the money.  (Compl., Ex. M).

A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted). Although the statute of limitations is an affirmative defense which may be waived by the defendant, it is appropriate to dismiss sua sponte under 28 U.S.C. § 1915(e)(2) a pro se civil rights claim whose untimeliness is apparent from the face of the Complaint. See, e.g., Jones v. Bock, 549 U.S. 199, 214-15 (2007)(if the allegations of a complaint, "for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim"); see also Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (holding, under former § 1915(d) in forma pauperis provisions, that sua sponte dismissal prior to service of an untimely claim is appropriate since such a claim "is based on an indisputably meritless legal theory"); Hunterson v. DiSabato, 2007 WL 1771315 (3d Cir.2007)("district court may sua sponte dismiss a claim as time-barred under 28 U.S.C. § 1915(A)(b)(1) where it is apparent from the complaint that the applicable limitations period has run")(citing Jones v. Bock, Pino v. Ryan)(not precedential); Hall v. Geary County Bd. of County Comm'rs, 2001 WL 694082 (10th Cir. June 12, 2001) (unpub.) (applying Pino to current § 1915(e)); Rounds v. Baker, 141 F.3d 1170 (8th Cir. 1998)(unpub.);

Johnstone v. United States, 980 F.Supp. 148 (E.D. Pa. 1997)

(applying Pino to current § 1915(e)).

Federal courts look to state law to determine the
limitations period for § 1983 actions.  See Wallace v. Kato, 549
U.S. 384, 387-88 (2007).  Civil rights or constitutional tort
claims, such as that presented here, are best characterized as
personal injury actions and are governed by the applicable
state's statute of limitations for personal injury actions.  See
Wallace, supra; Jones v. R.R. Donnelley & Sons, 541 U.S. 369, 382
(2004)(federal civil rights claims under §§ 1981, 1982, 1983 and
1985 are subject to the state statute of limitations for personal
injury actions); Wilson v. Garcia, 471 U.S. 261, 280 (1985).
Accordingly, New Jersey's two-year limitations period on personal
injury actions, N.J. Stat. Ann. § 2A:14-2, governs plaintiffs'
claims under §§ 1983 and 1985.  See Montgomery v. DeSimone, 159
F.3d 120, 126 & n.4 (3d Cir. 1998); Cito v. Bridgewater Township
Police Dept., 892 F.2d 23, 25 (3d Cir. 1989).  Under N.J. Stat.
Ann. § 2A:14-2, an action for an injury to the person caused by a
wrongful act, neglect, or default must be commenced within two
years of accrual of the cause of action.  Cito, 892 F.2d at 25;
accord Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987).  Unless
their full application would defeat the goals of the federal
statute at issue, courts should not unravel states' interrelated
limitations provisions regarding tolling, revival, and questions
of application.  Wilson v. Garcia, 471 U.S. at 269.

24

Moreover, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." Wallace v. Kato, 549 U.S. at 388 (emphasis in original). A claim accrues as soon as the injured party "knew or had reason to know of the injury that constitutes the basis of his action." Sandutch v. Muroski, 684 F.2d 252, 254 (3d Cir. 1982). See also Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994). "Plaintiff's actual knowledge is irrelevant. Rather, the question is whether the knowledge was known, or through reasonable diligence, knowable. Moreover, the claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." Fassnacht v. United States, 1996 WL 41621 (E.D. Pa. Feb. 2, 1996)(citing Oshiver, 38 F.3d at 1386).

Here, the property at issue was seized on July 31, 2001. The property was held by the Somerset County Prosecutor's Office during the time that Gatson was tried on burglary and receiving stolen property charges. Gatson admits that he was eventually convicted on November 5, 2004, but contends that the conviction on third degree receipt of stolen property, which covers $75,000.00 or less, should have allowed for the return of the $256,340.00 seized on July 31, 2001. Gatson filed motions in his state court criminal proceedings arguing that the search and seizure was unlawful under the Fourth Amendment. Thus, at the latest, Plaintiffs plainly had reason to know by November 5,

2004, that they may have had a claim for the return of their
alleged property.  However, Plaintiffs did not file this federal
action until April 8, 2009, almost four (4) years later.

Moreover, upon careful review of the Complaint and the many
pages of exhibits attached thereto, there is nothing alleged to
support an argument that Plaintiffs would be entitled to
equitable tolling of the statute of limitations.  Any claim that
Plaintiffs now allege concerning the violation of their Fourth
Amendment rights accrued when the search warrant was executed on
July 31, 2001.  See Wallace, 549 U.S. at 389-92.
Plaintiffs allege no facts or extraordinary circumstances that
would permit statutory or equitable tolling under either New
Jersey or federal law.[8]  Nor do Plaintiffs plead ignorance of the

---

[8]  New Jersey statutes set forth certain bases for
"statutory tolling."  See, e.g., N.J.S.A. § 2A:14-21 (detailing
tolling because of minority or insanity); N.J.S.A. § 2A 14-22
(detailing tolling because of nonresidency of persons liable).
New Jersey law permits "equitable tolling" where "the complainant
has been induced or tricked by his adversary's misconduct into
allowing the filing deadline to pass," or where a plaintiff has
"in some extraordinary way" been prevented from asserting his
rights, or where a plaintiff has timely asserted his rights
mistakenly by either defective pleading or in the wrong forum.
See Freeman v. State, 347 N.J. Super. 11, 31 (citations omitted),
certif. denied, 172 N.J. 178 (2002).  "However, absent a showing
of intentional inducement or trickery by a defendant, the
doctrine of equitable tolling should be applied sparingly and
only in the rare situation where it is demanded by sound legal
principles as well as the interests of justice."  Id.
     When state tolling rules contradict federal law or policy,
in certain limited circumstances, federal courts can turn to
federal tolling doctrine.  See Lake v. Arnold, 232 F.3d 360, 370
(3d Cir. 2000).  Under federal law, equitable tolling is
appropriate in three general scenarios:
     (1) where a defendant actively misleads a plaintiff
     with respect to her cause of action; (2) where the

law or the fact of his confinements (neither excuse being sufficient to relax the statute of limitations bar in this instance) as the basis for delay in bringing suit. In fact, Plaintiffs are completely silent with respect to the fact that their Complaint has been submitted out of time. Plaintiffs have has not offered any explanation for their lack of diligence in pursuing this claim long after it had expired. This omission strongly militates against equitable tolling of the statute of limitations. Therefore, the Court finds that the §§ 1983 and 1985 claims alleging violations of their constitutional rights under the Fourth and Fourteenth Amendments,[9] are time-barred and must be dismissed with prejudice.[10]

---

plaintiff has been prevented from asserting her claim
as a result of other extraordinary circumstances; or
(3) where the plaintiff asserts her claims in a timely
manner but has done so in the wrong forum.

Id. n.9.


[9] Plaintiffs' claim of a Fifth Amendment violation more properly refers to the Fourteenth Amendment in that it raises a denial of due process with respect to the property allegedly seized unlawfully by state government officials rather than federal officers.


[10] Even if the claims were not time-barred, this Court would find that Plaintiffs have failed to state a claim under § 1983 for a Fourth Amendment violation. Retention of seized property may violate the Fourth Amendment if the government is unable to establish probable cause for the initial seizure. See Krimstock v. Kelly, 306 F.3d 40 (2d Cir. 2002), cert. denied, 539 U.S. 969 (2003). However, in this case, the legality of the initial seizure is not in issue as it was based on a validly obtained search warrant, an issue raised by Gatson and determined by the state court in Gatson's direct appeal from his conviction on two counts of receiving stolen property. See State v. Gatson,

E.  RICO Claims

        Plaintiffs also invoke federal question jurisdiction under
28 U.S.C. § 1331, broadly alleging a claim that defendants acted
in violation of the Racketeer Influenced and Corrupt Organization
Act ("RICO").  See 18 U.S.C. §§ 1962(c).  Even under the most
liberal reading of the Complaint, Plaintiffs fail to identify an
enterprise, or any particular acts of alleged racketeering
necessary to support a civil RICO claim.  Nor do Plaintiffs
allege any pattern of racketeering activity.  The allegations are
based solely on the seizure of property pursuant to a lawfully
obtained search warrant.  Thus, the Complaint is completely
devoid of any particularized factual allegations necessary to
support the statutory requirements of a RICO claim.  Accordingly,
because Plaintiffs do not allege the necessary factual basis to

_____

2007 WL 3196298 (N.J. App. Div. Nov. 1, 2007).

        Likewise, Plaintiffs have not demonstrated a Fourteenth
Amendment violation.  Plaintiffs had an adequate post-deprivation
of property remedy available to them, namely, a replevin action,
which Gatson had filed, but was ultimately unsuccessful.  It is
further noted, that on August 8, 2008, the Somerset County
Prosecutor's Office wrote to Gatson informing him that
arrangements could be made by him or someone on his behalf to
take custody of the Bayliner boat and $8,938.00 seized during
their investigation of Gatson.  It is not clear from the
Complaint whether Plaintiffs made such arrangements.  Of course,
the $253,310.00 was returned to the Arvanitises from whom the
money was taken during a burglary after it was determined that
there was no dispute that the money belonged to them.

        Finally, Plaintiffs asserts a bald claim of an Eighth
Amendment violation.  However, there appears to be no basis for
an Eighth Amendment violation because Plaintiffs were not
assessed any storage costs or excessive fines with respect to the
property seized.

raise a viable claim under the RICO statute, the Complaint will be dismissed under 28 U.S.C. § 1915A(b)(1).

E.   Remaining State Law Claims

Finally, to the extent that Plaintiffs may be alleging claims of intentional infliction of emotional distress and other tort actions, these claims are state common law tort claims, over which this Court declines to exercise supplemental jurisdiction, because there are no claims pending in this action over which this Court has original jurisdiction.  See 28 U.S.C. § 1367(c)(3).

V.   CONCLUSION

Therefore, for the reasons set forth above, the Complaint will be dismissed with prejudice, in its entirety, with respect to all defendants, for failure to state a claim at this time, and because it seeks monetary relief from defendants who are immune from such relief, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), (iii) and 1915A(b)(1) and (2).  Plaintiffs' applications for appointment of counsel (docket entry nos. 2 and 3) are denied as moot.  An appropriate order follows.

_____
STANLEY R. CHESLER
United States District Judge

Dated: 11/2/09